UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

UNITED STATES OF AMERICA )
)
) No. 3:21cr109
v. )
)
JAMES WAYLON HOWELL ) Judges: Jordan/Poplin
)

# INFORMATION

The United States Attorney for the Eastern District of Tennessee charges:

### COUNT ONE
### Wire Fraud
### (18 U.S.C. § 1343)

**A.  Background**

1. At all times material to this information, the defendant, JAMES WAYLON HOWELL, was a resident of Knoxville, Tennessee, in the Eastern District of Tennessee.

2. At all times material to this information, HOWELL was the primary owner, or claimed to be the primary owner, of two small businesses that were purportedly incorporated in Delaware and headquartered in the Eastern District of Tennessee.

3. Advanced Strategy Holdings, LLC, was registered with the State of Tennessee and lists its principal address as a residence in Knoxville, Tennessee. HOWELL is listed as the entity's registered agent with the State of Tennessee. HOWELL's residential address in Knoxville, Tennessee, is the same as the entity's primary office address in Knoxville, Tennessee.

4. Greencore, LLC, was registered with the State of Tennessee and lists its principal address as a residence in Knoxville, Tennessee. HOWELL is listed as the entity's registered agent with the State of Tennessee. HOWELL's residential address in Knoxville, Tennessee, is the same as the entity's primary office address in Knoxville, Tennessee.

## Paycheck Protection Program

5. The Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") was a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). In or around April 2020, Congress authorized over $300 billion in additional PPP funding. The purpose of loans issued under the PPP was to enable small businesses suffering from the economic downturn to continue to pay salaries or wages to their employees.

6. The PPP was administered by the Small Business Administration ("SBA"), which promulgated regulations concerning eligibility for a PPP loan. Eligible businesses seeking a loan under the PPP could apply for such a loan through a federally insured depository institution.

7. To obtain a PPP loan, a qualifying business must submit a PPP loan application, which is signed by an authorized representative of the business. The PPP loan application requires the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan. In the PPP loan application, the small business (through its authorized representative) must state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures are used to calculate the amount of money the small business is eligible to receive under the PPP. In addition, businesses applying for a PPP loan must include documentation showing their payroll expenses and other information as part of the application.

8. A PPP loan application must be processed by a participating lender. If a PPP loan application is approved, the participating lender funds the PPP loan using its own monies, which

2

Case 3:21-cr-00109-RLJ-DCP   Document 1   Filed 08/18/21   Page 2 of 7   PageID #: 2

are 100% guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, is transmitted by the lender to the SBA in the course of processing the loan.

9. PPP loan proceeds must be used by the business on certain permissible expenses: payroll costs, interest on mortgages, rent, and utilities. The PPP allows the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expense items within a designated period of time after receiving the proceeds and uses a certain amount of the PPP loan proceeds on payroll expenses.

10. The proceeds of a PPP loan were not permitted to be used to purchase consumer goods, automobiles, personal residences, clothing, jewelry, to pay the borrower's personal federal income taxes, or to fund the borrower's ordinary day-to-day living expenses unrelated to the specified authorized expenses.

### Economic Injury Disaster Loans

11. The Economic Injury Disaster Loan ("EIDL") program was an SBA program that provided low-interest loans to small businesses, renters, and homeowners in regions affected by declared disasters.

12. The CARES Act also authorized the SBA to provide EIDLs of up to $2 million to eligible small businesses experiencing substantial financial disruptions due to the COVID-19 pandemic. In addition, the CARES Act authorized the SBA to issue advances of up to $10,000 to small businesses within three days of applying for an EIDL.

13. In order to obtain an EIDL and advance, a qualifying business was required to submit an application to the SBA and provide information about its operations, such as the number of employees, gross revenue for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster. In the case of EIDLs for COVID-19

3

Case 3:21-cr-00109-RLJ-DCP   Document 1   Filed 08/18/21   Page 3 of 7   PageID #: 3

relief, the 12-month period was the period preceding January 31, 2020. For a business to be eligible for an EIDL, the business must have been in operation before February 1, 2020. The applicant was also required to certify that all the information in the application was true and correct to the best of the applicant's knowledge.

14. EIDL applications were submitted directly to the SBA and processed by the agency with support from a government contractor, Rapid Finance. Approval of a loan application and the amount of a loan was based, in part, on the information provided on the application about the number of employees, gross revenue, and cost of goods, as described above. Upon approval of an application for an EIDL or advance, SBA will disburse the funds. EIDL loan proceeds were permitted to be used for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments.

B. **The Scheme**

Beginning on or about April 1, 2020, and continuing up to and including on or about June 17, 2020, the defendant, JAMES WAYLON HOWELL, knowingly and willfully devised and intended to devise a scheme and artifice to defraud, and to obtain money and property, by means of materially false and fraudulent pretenses, representations, and promises.

C. **Purpose and Object of the Scheme**

It was the purpose and object of the scheme for HOWELL to unjustly enrich himself and others by obtaining EIDL and PPP loan proceeds under false and misleading pretenses, including by making false statements about the number of individuals his companies employed; the companies' gross revenues and payroll taxes; and the intended use of the loan proceeds.

D. **Manner and Means**

1. It was part of the scheme that defendant, JAMES WAYLON HOWELL, submitted electronic loan applications, or caused to be submitted electronic loan applications, for

4

small businesses that purportedly provided consulting and financial services to individuals. HOWELL inflated the gross revenues generated by these small businesses, the wages paid to employees, and the number of individuals employed, all for the purpose of obtaining loans that were intended for distressed small businesses as a result of the COVID-19 pandemic.

2. It was further part of the scheme that HOWELL created fraudulent Internal Revenue Service ("IRS") documents, including Form 1040, Schedule C, Profit or Loss from Business, for Advanced Strategy Holdings that inflated the business's gross revenues and wages. HOWELL knew that these IRS documents (i) contained fraudulent information; (ii) were not filed with the IRS; and (iii) were created by HOWELL for the purpose of obtaining fraudulent loan proceeds.

3. It was further part of the scheme that HOWELL concealed and attempted to conceal the scheme by transferring loan proceeds among various bank accounts that he controlled.

E. **Execution of the Scheme**

On or about April 1, 2020, in the Eastern District of Tennessee, the defendant, JAMES WAYLON HOWELL, for the purpose of executing the scheme and artifice described above, transmitted or caused to be transmitted by means of wire communication in interstate commerce a writing, sign, or signal—that is, the electronic submission of an EIDL loan application on behalf of Advanced Strategy Holdings, LLC—from HOWELL's electronic device in Knoxville, Tennessee, to the SBA's computer servers located outside the state of Tennessee.

All in violation of 18 U.S.C. § 1343.

## COUNT TWO
### Money Laundering
### (18 U.S.C. § 1957)

On or about July 3, 2020, in the Eastern District of Tennessee, the defendant, JAMES WAYLON HOWELL, did knowingly engage and attempt to engage in a monetary transaction by, through, and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000; that is, defendant transferred or caused to be transferred, $83,700 of fraudulently obtained loan proceeds to his personal bank account at TVA Employee's Credit Union (Acct. No. X-3026), such proceeds having been derived from a specified unlawful activity; that is, wire fraud, in violation of Title 18, United States Code, Section 1343.

In violation of Title 18, United States Code, 1957 and 2.

### Forfeiture Allegations

The allegations contained in this Information are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Sections 982(a)(1) and (2).

Pursuant to Title 18, United States Code, Section 982(a)(2), upon conviction of the violation alleged in Count One, wire fraud, in violation of Title 18, United States Code, Section 1343, the defendant JAMES WAYLON HOWELL, shall forfeit to the United States, any property constituting, or derived from, proceeds defendant obtained directly or indirectly, as the result of such violation.

Pursuant to Title 18, United States Code, Section 982(a)(1), upon conviction of the violation alleged in Count Two, money laundering, in violation of Title 18, United States Code,

Section 1957, the defendant JAMES WAYLON HOWELL, shall forfeit to the United States, any property, real or personal, involved in such offense, or any property traceable to such property.

The property to be forfeited includes, but is not limited to, the following:

***Money Judgment.*** A personal money judgment in the amount of $69,354.88 in U.S. currency, which represents the minimum amount of proceeds the defendant, JAMES WAYLON HOWELL, personally obtained as a result of an offense in violation of 18 U.S.C. §§ 1343 and/or 1957.

If any of the property subject to forfeiture, as a result of any act or omission of a defendant,

a. cannot be located upon the exercise of due diligence;
b. has been transferred, sold to, or deposited with a third party;
c. has been placed beyond the jurisdiction of the Court;
d. has been substantially diminished in value; or
e. has been commingled with other property that cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1).

FRANCIS M. HAMILTON III
Acting United States Attorney

By: *William A. Roach*
William A. Roach, Jr.
Assistant United States Attorney

7